UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Aaron Ridge, | Case No. 2:24-cv-01910-CDS-NJK |
| Plaintiff | **Order Denying the Plaintiff's Partial Motion for Summary Judgment and Granting in Part the Defendant's Motion for Summary Judgment** |
| v. | |
| Harris Las Vegas, | |
| Defendant | [ECF Nos. 28, 29] |

Plaintiff Aaron Ridge brings this employment discrimination case against Harris Las Vegas, LLC.[1] Ridge filed a complaint, asserting in essence four causes of action: (1) discrimination under Title VII; (2) retaliation under Title VII; (3) discrimination under § 1981; and (4) retaliation under § 1981.[2] ECF No. 1. Pending before the court are: Ridge's motion for partial summary judgment (ECF No. 28) and Harris' motion for summary judgment (ECF No. 29). Both motions are fully briefed.[3] For the reasons set forth herein, I deny Ridge's motion for partial summary judgment and grant in part Harris' motion for summary judgment.

---

[1] Harris Las Vegas is a mechanical contracting company. *See* Stephanie Mylles dep., Pl.'s Ex. C, ECF No. 28-3 at 11. For brevity and consistency, Harris Las Vegas will be referred to as Harris.

[2] I note that the parties bring a summary judgment motion on both § 1981 claims, however, it is unclear to this court whether Ridge has sufficiently and properly pled a § 1981 claim in his complaint, considering that the evidence before the court indicates that Ridge worked as an apprentice for Harris at the Madison Square Garden through his Pipefitter Plumbers Apprenticeship School program. ECF No. 28-1 at 12, 14–15. Because it is unclear if Ridge entered a separate contract to work for Harris, which would allow him to bring a § 1981 claim, and because Ridge did not challenge the § 1981 claims on the merits in their motion, the court limits its analysis to Ridge's Title VII claims. Further, since this matter is being referred to a settlement conference, if the parties are unable to reach a settlement, pursuant to Fed. R. Civ. P. 56(f), Ridge must file summary judgment explaining how and why he is entitled to summary judgment on his § 1981 claims within 30 days after the failed conference. Any responsive and reply briefing is due in accordance with the deadlines set in Local Rule 7-2(b).

[3] *See* Def.'s Resp., ECF No. 33; Pl.'s reply, ECF No. 35; Pl.'s resp., ECF No. 32; Def.'s Reply, ECF No. 36.

I.    Background

   A.  **Ridge was hired to work as an apprentice for Harris Las Vegas**

   Around 2019, Ridge applied to the Pipefitter Plumbers Apprenticeship School. Aaron Ridge dep., Pl.'s Ex. A, ECF No. 28-1 at 12. On May 17, 2021, Ridge was hired to work for Harris, a mechanical contracting company. *See* Stephanie Mylles dep., Pl.'s Ex. C, ECF No. 28-3 at 11, 28. Between May and September of 2021, Ridge worked as an apprentice for Harris at the Madison Square Garden Sphere. ECF No. 28-1 at 14–15; Pl.'s Admis., Pl.'s Ex. B, ECF No. 28-2 at 2. Ridge typically worked "all over the site" on a typical day and on multiple floors. Ridge dep., Def.'s Ex. A, ECF No. 29-3 at 30, 166. Ultimately, Ridge's employment with Harris ended on September 30, 2021. Notice, Def.'s Ex. T, ECF No. 29-18 at 2.

   B.  **"The Incidents"**

   On August 25, 2021, while working at the Madison Square Garden Sphere, Ridge's co-worker, Robert Walker, found a noose hung near his workplace. ECF No. 28-1 at 20, 33.[4] At the time of this incident, Ridge was near Walker, saw the noose, then took pictures of it. *Id.* at 33; Picture of noose; Def.'s Ex. I, ECF No. 29-11 at 2. Sometime on August 25, 2021, Harris was informed of these events by other employee-witnesses and by Ridge who reported it to Harris.[5] ECF No. 28-1 at 33.

   On August 26, 2021, Harris held an "All Hands" meeting at the work site. Email, Def.'s Ex. J, ECF No. 29-12 at 2. In addressing the noose situation, one of the employers at Harris, Ron Pate, gave a speech. ECF No. 28-1 at 36. Pate stated he believed that the noose situation was meant to be "a joke." *Id.* at 37, 48. During that same meeting, another Harris employee—Don Randall—made an announcement regarding lug nuts and bolts being loosened on a couple of lifts at the work site. *Id.* at 86–87. But Randall did not state that the lug nuts and bolts were

---

[4] During Ridge's deposition, he explained that the location of this incident took place where the majority of the workers were African American and were in Dexter Smith's group. *See* Pl.'s Ex. A, ECF No. 28-1 at 18, 20, 55.

[5] It is unclear from the record what other employee-witnesses reported the incident to Harris.

loosened intentionally. *Id.* at 87. Harris' superintendent also sent an email on August 25, 2021, to hold a mandatory safety stand-down meeting on August 26, 2021. Aug. 2021 email, Def.'s Ex. K, ECF No. 29-13. In this email, superintendent Greg Kanaley stated that the noose observed is an action that "WILL NOT FLY in today[']s culture." *Id.*

On September 1, 2021, Ridge observed racial graffiti depicting the terms "white power" in port-a-potty. ECF No. 28-1 at 40, 58–60. Ridge took a photo of this graffiti. *Id.* at 60; Picture of graffiti, Def.'s Ex. Q, ECF No. 29-16 at 2. After this incident, Ridge alerted the foreman (Dexter Smith), one of his co-workers (Rob), his business agent (Justin Amy for Local 525), and attempted to get Safety involved. *Id.* at 62.

Around September 30, 2021, after this graffiti incident, Ridge found more racist graffiti, again inside of a port-a-potty. ECF No. 28-1 at 62, 66. He took a video and pictures of it. *Id.* at 66. This graffiti had the word, "N***A" in the port-a-potty at Harris's jobsite. *Id.* at 76–77. After this incident, Ridge showed the video to Suatipatipa Sua, the steward. *Id.* at 77. Sua also saw the graffiti in person. *Id.*

### C. Harris' investigative procedure

Stephanie Mylles has worked as a senior human capital business partner at Harris since December of 2020. *See* ECF No. 28-3 at 3, 11. In her role, among other responsibilities, she assists with recruiting, performance management, performance reviews, terminations, and workforce planning. *See id.* at 11. Mylles was deposed and she detailed the structure of the union, Harris' employees, and Harris' procedure for investigating complaints. *See* ECF No. 28-3 at 11, 34. In particular, Mylles explained that the union employees assigned to Harris were considered employees of Harris. *Id.* at 34.

The Harris employee handbook has a policy prohibiting race discrimination. ECF No. 28-3 at 17, 25. The handbook also explains the process for filing a complaint for violating that policy. *Id.* Employees are advised to immediately report the discrimination to their supervisor, manager, or human capital. *Id.* at 17–18, 26. It further explains that the complaining party may be asked to

3

cooperate in any investigation that results. *Id.* at 56. Harris also "prohibits retaliation for making a complaint or cooperating in an investigation under this policy." *Id.*

### D. Investigation of "the Incidents"

On September 1st, Ridge filed a complaint. ECF No. 28-1 at 158.[6] Madison Square Garden handled the investigation concerning Ridge's complaint. ECF No. 28-3 at 33.[7] Sometime after the noose incident,[8] Ridge was interviewed by the Madison Square Garden personnel; specifically, he had a Zoom meeting regarding the noose incident. ECF No. 28-1 at 40. Ridge went to the Madison Square Garden trailer at the Sphere jobsite for the zoom meeting. ECF No. 29-3 at 84–85.

Ridge explained during his deposition, that the following individuals were present during the interview: two Las Vegas Metropolitan Police Department officers and a Harris employee, Brian (last name unknown). ECF No. 29-3 at 84. Ridge further explained that other individuals from Harris attempted to get involved in investigating the incident, including Sua, the work steward, and the union steward. ECF No. 28-1 at 83–84.

### E. Disputed facts: Harris' efforts and Ridge's departure from Harris

Among the facts disputed between the parties are Harris' involvement in investigating the Incidents and Ridge's departure from Harris. *See* ECF No. 28 at 2, 5; ECF No. 29 at 16; ECF No. 32 at 4–5. Harris asserts that there were multiple investigations into the noose, but it produced no evidence that a Harris employee was responsible for the noose or graffiti. Denise Machado's decl., Def.'s Ex. M, ECF No. 29-14 at 3, ¶¶ 6–8. Harris asserts it assisted Madison Square Garden and the Las Vegas Metropolitan Police Department with the investigation. *Id.* at ¶ 8. But Mylles stated during her deposition that Ridge's complaint was handled by Madison

---

[6] It is unclear from the record if Ridge's complaint was filed. *See* ECF No. 28-1 at 53, 89, 158–59; ECF No. 28-2 at 7.

[7] During her deposition, Mylles also explained that Madison Square Garden was the customer, who was building the Sphere, and Harris was a subcontractor hired to help with building the Sphere. ECF No. 28-3 at 33–34.

[8] Ridge could not recall the date. Pl.'s Ex. A, ECF No. 28-1 at 84.

4

Square Garden and Ridge's complaints were not escalated to Harris' employees. ECF No. 28-3 at 32–33.

The parties also dispute how Ridge's employment with Harris ended. Ridge asserts that he was fired by his business agent, Justin Amy. ECF No. 28-1 at 77. In essence, Ridge's position is that he was fired for trying to make a third complaint regarding a separate incident. ECF No. 29-3 at 95. However, Harris interpreted Ridge's actions on September 30, 2021 as a voluntarily resignation. ECF No. 29 at 16 (citing ECF No. 29-14 at 4, ¶ 18; Mylles's decl., Def.'s Ex. B, ECF No. 29-4 at 3, ¶ 7). That is, when Ridge spoke with Sua and the onsite safety officer, Edward Palma, about the graffiti, Ridge told Eddie Palma that he was going to get his money (in essence resigning). *See* ECF No. 29-3 at 92–95. Harris contends that the conversation between Palma and Ridge got "heated" and Ridge had a metal pipe in his hand at the time. *Id.* at 95, 97–98.[9] Sua also described the conversation as follows: Ridge "was very upset[,] he took off his hard hat and told me [he is] ready to box/fight anyone" and he tried to calm Ridge down, but Ridge was too upset. Sua's letter, Def.'s Ex. S, ECF No. 29-17 at 3. Sua further explained that he spoke with Justin, who said that if Ridge asked for his money, then he was gone. *Id.*

**II.    Legal standard**

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmovant, indicates "no genuine dispute as to any material fact" and that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit" based on the governing law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "mere disagreement or the bald assertion that a genuine

---

[9] Ridge's actions during his conversation with Sua and Palma is also disputed. *See* ECF No. 29 at 14 (five Harris employees witnessed the event and wrote statement describing the events, Sua describing Ridge as becoming confrontational and told Palma he could start a "racism war") *but see* ECF No. 32 at 14 (plaintiff denying that he ever threatened anyone at the school).

5

issue of material fact exists" is not enough to defeat summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

Because the plaintiffs bear the burden of proof at trial, a moving defendant need only point to an absence of evidence on an element of the plaintiffs' case. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250–51. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

**III.   Discussion**

    **A.  Ridge's partial motion for summary judgment (ECF No. 28) and Harris' motion for summary judgment on the hostile work environment claim (ECF No. 29).**

Ridge moves for partial summary judgment on his Title VII claim, arguing there is no genuine dispute that the defendant failed to conduct a prompt and reasonable investigation into the plaintiff's complaints. ECF No. 28 at 2. In particular, Ridge asserts that the presence of a noose hung near a worksite manned primarily by black employees was severe enough to be construed as a psychological and physical threat to Ridge and other black employees, thus altering the safety and work conditions of the black employees who found the noose. *Id.* at 6. Ridge also asserts that there was another incident where he was subjected to racial graffiti written in workplace port-a-potty bathrooms. *Id.* at 7.

In opposition, Harris argues that partial summary judgment should be denied for three reasons: (1) Ridge does not allege a hostile work environment claim in his complaint; (2) even if

he did allege a hostile work environment claim, it fails because he was not subjected to a hostile work environment, and his allegation is conclusory in nature; (3) Ridge does not cite points and authorities that stands for the proposition that an employer is liable for not completing its own comprehensive investigation of an incident. ECF No. 33. Harris also moves for summary judgment on Harris's hostile work environment claim, arguing the claim fails for multiple reasons. *See* ECF No. 29 at 26–31.

### 1. *Ridge alleges a hostile work environment claim in his complaint.*

As a threshold matter, though not separately titled in his complaint as a hostile workplace environment claim, I find that a hostile work environment claim is alleged in Ridge's complaint, and the support provided in his complaint is not conclusive in nature.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2). "All pleadings shall be construed as to do substantial justice," Fed. R. Civ. P. 8(f), and "no technical forms of pleading . . . are required." Fed. R. Civ. P. 8(e)(1). A claim is facially plausible when the pleadings allow the court to draw a reasonable inference that defendant is liable for the alleged misconduct. *Id.* at 556.

With this standard in mind, I find that Ridge's complaint adequately alleges a hostile workplace environment claim. Among Ridge's allegations to support an assertion for a hostile workplace environment:

> Throughout his employment with Defendants, Plaintiff was subjected to ongoing and continuous race-based hostility, which senior leadership did nothing to remedy thus rendering the working conditions for people of color at Defendant H[arris] **deplorably hostile**.

> Plaintiff was told by Defendant H[arris] employee Ron Pate that the noose was a "joke" and an "act of ignorance."

7

**Plaintiff's anxiety and fear for his safety continued to increase as he was never given any additional security assurances or protocol** to follow should the discrimination and threats he faced persist, which they did.

ECF No. 1 at ¶¶ 14, 18, 23 (emphasis added).

Thus, while Ridge does not explicitly have a legal theory section in his complaint labeled as hostile work environment, there are sufficient allegations to show that Ridge may be entitled to some relief. *See Indergard v. Georgia-Pacific Corp.*, 2010 WL 331774, at *5 (D. Or. Jan. 21, 2010) ("[A] party need not plead specific legal theories in a complaint.").

### 2. *Harris is entitled to summary judgment on Ridge's hostile work environment claim.*

Although Ridge brought a hostile work environment claim, it does not survive summary judgment. In order to state a claim for a hostile work environment under Title VII, the plaintiff must prove that (1) he was subjected to verbal or physical conduct because of race or disability, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1108 (9th Cir. 2008). Courts will consider all the circumstances, including frequency of the allegedly discriminatory conduct, its severity, and whether it reasonably interferes with an employee's work performance. *Id.* (citing *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000)); *see also Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (explaining that when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and creates an abusive working environment, Title VII is violated).

Where harassment by a co-worker is alleged, the employer can be held liable only where "its own negligence is a cause of the harassment." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998). That is because Title VII liability is direct, not derivative: an employer is responsible for its own actions or omissions, not for the co-worker's harassing conduct. *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001).

Ridge asserts that because the only evidence available indicates that Harris failed to conduct *any* investigation, the court should grant his partial summary judgment. ECF No. 28 at 2. To support his argument, Ridge asserts that an employer "ratifies or condones" employee harassment "by failing to investigate and remedy it after learning of it." ECF No. 28 at 7 (citing *Galdamez v. Potter*, 415 F.3d 1015, 1022 (9th Cir. 2005)). Ridge further argues that the only action that Harris took to remedy the incidents that occurred was to shut down the worksite for the afternoon following the noose incident, hold a team meeting the following day where general statements about "no tolerance" were issued, and conduct racial sensitivity training months later. ECF No. 28 at 9.

At the heart of Ridge's argument is, that because Harris did not conduct an independent investigation separate and apart from the investigation conducted by Madison Square Garden, this court should find no material fact in dispute as to his hostile workplace environment claim. In his reply, Ridge argues that part of the corrective action that an employer must take when there is a hostile work environment claim, is to initiate a prompt investigation. ECF No. 35 at 9. While an investigation is a *key* step in the employer's response, it is not the only step. *See Swenson*, 271 F. 3d at 1193 (citing *Swentek v. USAIR, Inc.*, 830 F.2d 552, 558 (4th Cir. 1987) (employer obliged to investigate complaint and to present a reasonable basis for its subsequent action)). Ridge fails to explain why, nor does he point to any case law supporting that, Harris' failure to conduct its own investigation entitles him to summary judgment. The evidence shows that Harris at least, in part, attempted to assist in the investigation, even if it was not spearheaded by Harris. ECF No. 29-14 at 3, ¶¶ 6–8. Thus, Ridge is not entitled to summary judgment based on this argument.

Turning to Harris' motion for summary judgment, because Ridge bears the burden of proof at trial, Harris need only point to an absence of evidence on an element of the plaintiff's case. *Musick*, 913 F.2d at 1394. Harris argues that there is insufficient evidence to (1) support that Ridge was subjected to verbal or physical conduct by Harris employees because of his race and (2) to find the conduct was sufficiently severe to alter the conditions of his employment. ECF

9

No. 29 at 27. Harris further contends that it had "no control over the hundreds of workers employed by various contracts," nor a duty to maintain the workplace. *Id.* Finally, Harris argues that, even if a Harris employee was responsible for the placement of the noose or graffiti, liability cannot attach because there is no evidence showing either the noose or racist graffiti incidents were directed at Ridge. *Id.* at 28. In opposition, Ridge testified during his deposition that the areas where these incidents occurred were near his workspace (noose incident) and port-a-potty (graffiti). *See* Ridge dep., Pl.'s Ex. A, ECF No. 32-1 at 21, 33, 61. But this is insufficient, especially given that Ridge concedes, at least as it relates to the noose, that it was placed in an area where a majority of African-American workers were assigned, making it directed towards a larger group, not personally directed at Ridge. *See* ECF No. 32 at 2. To meet the first prong of a hostile work environment claim, a plaintiff must allege that they were *personally* subjected to verbal or physical conduct because of race. *See Henry v. Regents of the Univ. of California*, 644 Fed. Appx. 787, 788 (9th Cir. 2016) (explaining that the plaintiff has not provided evidence that the noose was directed at him personally). The racially charged incidents are without a doubt appalling. But there is no evidence that either incident was directed at Ridge. Consequently, Harris is entitled summary judgment on this claim.[10]

### B. Harris' motion for summary judgment (ECF No. 29)

Harris moves for summary judgment as to Ridge's discrimination, hostile workplace environment,[11] and retaliation claims. *See generally* ECF No. 29. In opposition, as it relates to his

---

[10] The court notes that even if it continued its analysis, this claim would fail for a second reason, that is, the record is devoid of evidence showing how this altered the conditions of his employment. *See Fried v. Wynn Las Vegas, LLC*, 18 F.th 643, 649 (9th Cir. 2021) (citations omitted) (explaining that the required severity for "harassing conduct varies inversely with the pervasiveness or frequency of the conduct."). Harris argues that at most, Ridge shows that the noose and graffiti was subjectively offensive to him, but he cannot show that it was objectively severe and pervasive enough "to alter the conditions of [Ridge's] employment and create an abusive work environment." ECF No. 33 at 14 (quoting *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998)). I agree, so this claim would fail at the third element as well.

[11] The plain language of Rule 56(c) mandates the entry of summary judgment, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Here, there has been no evidence to support a finding that the alleged conduct was sufficiently severe or pervasive to alter the conditions of employment and create an

discrimination claims, Ridge argues that he suffered adverse employment action and was treated differently than similarly situated employees, so summary judgment would be inappropriate. ECF No. 32 at 11–13. As to his retaliation claim, Ridge argues that genuine issues of material fact exist regarding whether Harris retaliated against him, which precludes summary judgment. *Id.* at 16–18.

### 1.  *I grant Harris' summary judgment motion as to Ridge's race discrimination claim.*

Title VII prohibits employment discrimination based on any of its enumerated grounds: "race, color, religion, sex, or national origin." *Harris*, 510 U.S. at 21 (quoting 42 U.S.C. § 2000e–2(a)(1)). To prevail on his claim, a plaintiff must demonstrate that "(1) [he] belongs to a protected class, (2) [he] was qualified for the position in question, (3) [he] was subject to an adverse employment action, and (4) similarly situated individuals outside [his] protected class were treated more favorably." *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018). If the defendant can demonstrate such a reason, the burden shifts back to the plaintiff to show that the reason offered is pretextual. *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000). For a prima facie case, the plaintiff must offer evidence that gives rise to an inference of unlawful discrimination either through the framework set forth above in *Campbell* or with direct or circumstantial evidence of discriminatory intent. *Vasquez v. County of Los Angeles*, 349 F.3d 634 (9th Cir. 2003), *as amended* (Jan. 2, 2004).

Ridge brings a discrimination claim under Title VII. Harris asserts that the first two elements a Title VII claim are met—that is, "Ridge is an African American male and belongs to a protected class, and it makes no assertion that Ridge failed to perform his job in a satisfactory manner throughout his employment with Harris." ECF No. 29 at 19. However, Harris argues that Ridge's discrimination claims cannot survive summary judgment because Ridge cannot

---

abusive working environment. *Surrell*, 518 F.3d at 1108. As such, for the reasons explained in the prior section, Harris is entitled to summary judgment on Ridge's hostile workplace environment claim.

establish the last two elements—i.e., that Ridge suffered an adverse employment action and that Ridge's employer treated him differently than a similarly situated employee. *Id.*

In opposition, Ridge asserts that he suffered adverse employment action by Harris' repeated failure to investigate. ECF No. 32 at 10. He argues that Harris misconstrues the relevant law and omits from its discussion its failure to investigate. *Id.* As to the second element, Ridge argues that he was treated differently than similarly situated employees by conclusively arguing that the non-African American employees did not endure the disparate, racially threatening treatment that he suffered. ECF No. 32 at 11–12. He further argues that Harris failed to conduct any investigation and did not interview a single employee, *id.*, and that he also suffered an adverse employment action through his "effective termination of employment." *Id.* at 11.

Because Harris does not challenge the first two elements, they are met here. As to the third element, there is evidence that an investigation was conducted and that Harris took some steps to remedy the racially charged incidents, ECF No. 29-14 at 3, ¶¶ 6–8, but there remain questions of material fact as to whether those actions sufficiently prevented Ridge from suffering an adverse employment action. And as discussed further below, the evidence in the record suggests that Ridge was effectively constructively discharged, ECF No. 32-1 at 91, 94–95, ECF No. 29-3 at 134; ECF No. 28-2 at 5, which would constitute an adverse employment action. *See Jordan v. Clark*, 847 F.2d 1368, 1377 n.10 (9th Cir. 1988) (A constructive discharge is an adverse employment action.). Thus, there is sufficient evidence to show the third element survives summary judgment.

But I find that Ridge fails to provide support as to the fourth element—that is, similarly situated individuals outside his protected class were treated more favorably. Generally, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial. *Sonner*, 911 F.3d at 992; *Galen*, 477 F.3d at 658. The nonmoving party "may not rely on denials in the pleadings **but must produce specific evidence**, through affidavits or admissible discovery material, **to show that the dispute exists.**" *Bhan*, 929 F.2d at 1409

12

(emphasis added). Therefore, to satisfy the fourth element, a plaintiff must identify employees outside their race and who were similarly situated to them "in all material respects" but who were treated more favorably; they must "have similar jobs and display similar conduct." *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009) (citation modified).

Even when viewing the arguments and evidence in the light most favorable to Ridge, there is simply insufficient evidence to satisfy the fourth element of his discrimination claim. *See Cervantes v. Emerald Cascade Rest. Sys.*, 2012 U.S. Dist. LEXIS 66804, at *12 (D. Nev. May 11, 2012) ("The standard to overcome summary judgment in a Title VII case is very low because most of the evidence presented will raise credibility issues, and, therefore, the plaintiff's right to a jury trial is zealously guarded.") (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)). To support the fourth element, Ridge merely asserts that "[t]he non-African American employees did not endure the disparate, racially threatening treatment that [the p]laintiff suffered, and which Defendant through its repeated inaction condoned or ratified." ECF No. 32 at 12. But Ridge fails to acknowledge nor address that an investigation was conducted, albeit not by Harris. The record is devoid of any explanation why that investigation was insufficient: this is an important analysis given that Harris was a contractor for Madison Square Garden. Ridge further fails to cite any other evidence to support his argument that Harris "condoned" or "ratified" the conduct, nor any other evidence—or comparators—to show he was treated differently. *See Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 537 (9th Cir. 1982) (explaining that a disparate treatment case requires proof that plaintiff was "singled out and treated less favorably than others similarly situated"). In the absence of direct evidence or concrete facts indicating disparate treatment, "[a]ny inference" that the employer's adverse actions were motived by "race animus would be pure speculation." *Foss v. Thompson*, 242 F.3d 1131, 1134 (9th Cir. 2001). Stated otherwise, Ridge fails to  produce evidence of a genuine dispute of material fact that could satisfy his burden as to the fourth element at trial. So I grant Harris' summary judgment as to Ridge's discrimination claim.

### 2. *There is a genuine issue of material fact as to Ridge's retaliation claim.*

Title VII makes it unlawful "for an employer to discriminate against any of [its] employees or applicants for employment . . . because [he] has opposed any practice." 42 U.S.C. § 2000e-3(a). Section 1981 prohibits "racial discrimination in taking retaliatory action." *Manatt v. Bank of Am. N.A.*, 339 F.3d 792, 798 (9th Cir. 2003) (citation omitted).

To establish a prima facie case of retaliation, a plaintiff must prove (1) he engaged in a protected activity (2) he suffered an adverse employment action, and (3) there was a causal connection between the two.[12] *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1140–41 (9th Cir. 2001). Once established, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions; at that point, the plaintiff must produce evidence to show that the stated reasons were a pretext for retaliation. *Id.*

An adverse employment action may include constructive discharge. *See Jordan*, 847 F.2d at 1377 n.10. A claim for constructive discharge has two elements. First, the plaintiff "must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign." *Green v. Brennan*, 578 U.S. 547, 555 (2016). Second, the plaintiff must show that he actually resigned. *Id.*

Ridge's complaint asserts that he attempted to submit a formal complaint a third time regarding the alleged blatant race discrimination he faced, and was not only rejected, but he was told that his apprenticeship was terminated. ECF No. 1 at 6, ¶ 36; *id.* at ¶¶ 37–38.[13] Further, Ridge asserts that he was told that his "resignation" was being accepted, but he had "made it abundantly clear" to Harris that he did not wish to resign from his apprenticeship, but rather

---

[12] I find that Ridge has created a genuine issue of material fact as to the first and third element. Ridge's complaint asserts that he attempted to file complaints (ECF No. 1) and his deposition (ECF No. 28-1 at 77) described the aftermath of attempting to report the incidents he witnessed at his workplace. As such, I find that Ridge did at least attempt to file a complaint. *See Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) ("Protected activity includes the filing of a charge or a complaint, providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to oppose an employer's discriminatory practices." (citing 42 U.S.C. § 2000e-3(a)).

[13] Though not directly alleged, I liberally construe Ridge's retaliation claim to assert that he was constructively discharged.

14

requested that the company investigate and resolve the alleged race discrimination incidents. ECF No. 32-1 at 90–92. He testified in his deposition that Justin Amy, his business agent, terminated him by stating Ridge quit, which Ridge was not allowed to do because he was an apprentice. *Id.* at 91, 94–95.

At the heart of Ridge's retaliation claim is that he was constructively discharged after he complained about the noose and graffiti. ECF No. 29 at 31. Harris argues it is entitled to summary judgment on Ridge's retaliation claim because "he suffered no adverse employment action" because Ridge quit his job. *Id.* at 32. Specifically, Harris asserts that Ridge quit when he "confronted and accosted his colleagues while holding a metal pipe, cursed them out, threatened to come back with weapons and start a race war, and told them to give him his final paycheck." *Id.* (citing Def.'s Ex. B, ECF No. 29-4 at ¶ 7; ECF No. 29-14 at 16–19; ECF No. 29-17 at 2). In opposition, Ridge argues that he suffered adverse employment action in two respects—Harris' failure to investigate led to continued acts of racial threats and Harris' decision to terminate him.[14] *See* ECF No. 32 at 17. As to his termination, Ridge asserts that Harris' own explanation of simultaneous leave of absence and suspension are inconsistent and contradictory. *Id.*

I find a genuine issue of material fact exists surrounding the circumstances of Ridge's employment with Harris ending, to include whether Ridge was terminated from his position, which would constitute an adverse employment action, or if he voluntary resigned. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995) (explaining if reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; so, the case must then proceed to the trier of fact). Both parties have provided contradictory evidence regarding the reasons and circumstances of Ridge's departure from his employment with Harris and these discrepancies are material to determining whether Ridge suffered an "adverse employment action." *Bergene*, 272 F.3d at 1140–

---

[14] Ridge testified regarding the circumstances of his discharge during his deposition. *See* ECF No. 28-2.

41. Accordingly, summary judgment is improper. So Harris' motion for summary judgment as to Ridge's retaliation claim is denied.

IV.     Conclusion

IT IS HEREBY ORDERED that the plaintiff's motion for partial summary judgment [ECF No. 28] is DENIED.

IT IS FURTHER ORDERED that the defendant's motion for summary judgment [ECF No. 29] is GRANTED in part as set forth in this order.

This case is referred to the magistrate judge for a mandatory settlement conference. The parties' deadline to file their proposed joint pretrial order is stayed until 30 days after the settlement conference, should this case not resolve. If the parties do not settle, pursuant to Fed. R. Civ. P. 56(f), Ridge must file summary judgment explaining how and why he is entitled to summary judgment on his § 1981 claims within 30 days after the failed conference.

Dated: March 30, 2026

_____
Cristina D. Silva
United States District Judge

16